IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
AIKEN DIVISION

| | | |
|---|---|---|
| Doris Hedwin, *on behalf of JH, a minor child*, | ) ) ) | C/A No.: 1:13-2466-RMG-SVH |
| Plaintiff, | ) ) | |
| vs. | ) ) | REPORT AND RECOMMENDATION |
| Commissioner of Social Security Administration, | ) ) ) | |
| Defendant. | ) ) | |

This appeal from a denial of social security benefits is before the court for a Report and Recommendation ("Report") pursuant to Local Civil Rule 73.02(B)(2)(a) (D.S.C.). Plaintiff Doris Hedwin ("Ms. Hedwin") brings this action on behalf of her minor son, JH, pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3) to obtain judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his claim for Supplemental Security Income ("SSI"). References to "Plaintiff" herein refer to JH. The two issues before the court are whether the Commissioner's findings of fact are supported by substantial evidence and whether she applied the proper legal standards. For the reasons that follow, the undersigned recommends that the Commissioner's decision be reversed and remanded for further proceedings as set forth herein.

I.      Relevant Background

    A.      Procedural History

On January 22, 2011, Ms. Hedwin filed an application for SSI on Plaintiff's behalf in which she alleged his disability began on January 1, 2009. Tr. at 101, 159. Plaintiff's application was denied initially and upon reconsideration. Tr. at 105–08, 112–13. On February 8, 2012, Plaintiff had a hearing before Administrative Law Judge ("ALJ") Marcus Christ. Tr. at 68–100 (Hr'g Tr.). The ALJ issued an unfavorable decision on February 29, 2012, finding that Plaintiff was not disabled within the meaning of the Act. Tr. at 11–28. Subsequently, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner for purposes of judicial review. Tr. at 3–6. Thereafter, Plaintiff brought this action seeking judicial review of the Commissioner's decision in a complaint filed on September 11, 2013. [Entry #1].

    B.      Plaintiff's Background and Medical History

        1.      Background

Plaintiff was 16 years old at the time of the hearing. Tr. at 102. He was in the ninth grade. Tr. at 70. He alleges he has been disabled since January 1, 2009. Tr. at 159.

        2.      Medical History

Plaintiff has a history of asthma, which the records indicate to be relatively asymptomatic except when Plaintiff has viral respiratory symptoms and when he is exposed to fumes from cleaning solvents. Tr. at 254, 292, 293, 367, 371, 372, 373, 374, 377, 439–40.

State agency consultants Judith Von, Ph.D., and Katrina B. Doig, M.D., jointly completed a childhood disability evaluation form on April 9 and 12, 2010.  Tr. at 255–60. They indicated that Plaintiff's impairment or combination of impairments was severe, but did not meet, medically equal, or functionally equal the Listings.  Tr. at 255.  They concluded that Plaintiff had marked limitation in the domain of "acquiring and using information;" that he had less than marked limitation in the domains of "attending and completing tasks" and "interacting and relating with others;" and that he had no limitation in any of the other three domains.  Tr. at 257–58.

State agency consultants Holly Hadley, Psy. D. and Jean Smolka, M.D., completed a childhood disability evaluation form on September 7, and 15, 2010, respectively.  Tr. at 308–13.  They indicated that Plaintiff had marked limitation in the domain of "acquiring and using information;" less than marked limitation in the domains of "attending and completing tasks" and "interacting and relating with others;" and no limitation in the three other domains.  Tr. at 310–11.

On September 15, 2011, Plaintiff was referred by Rozzhehr Safi, M.D., to J. Michael West, Ph.D., for neurodevelopmental cognitive assessment.  Tr. at 441–50.  Dr. West noted that Plaintiff had a full scale IQ of 60; a verbal comprehension score of 55; a perceptual reasoning score of 71; a working memory score of 77; and processing speed score of 70.  Tr. at 443.  Dr. West diagnosed adjustment disorder with mixed emotional reactions, attention deficit hyperactivity disorder, mixed receptive expressive language disorder, and learning disorder.  Tr. at 445.  Dr. West recommended that Plaintiff be

treated for attention deficits, referred to speech therapy, placed in a self-contained classroom, and have a behavior management plan at home.  Tr. at 446.

### 3.    School Records

School psychologist Mary Walters administered psycho-educational testing on December 9, 2009.  Tr. at 345–50.  The report indicates that Plaintiff cooperated, understood and followed directions, and put forth consistent effort.  Tr. at 345.  Plaintiff's score on the Bender Gestalt II test was 85, which placed him in the low average category for his age.  Tr. at 347.  Plaintiff scored as follows on the Wechsler Intelligence Scale for Children–Fourth Edition (WISC–IV): verbal comprehension 65; perceptual reasoning 71; working memory 77; processing speed 68; and full scale 62.  *Id.*  Plaintiff's scores ranged from "significantly low" to "borderline."  *Id.*  Plaintiff's scores on the Wechsler Individual Achievement Test–II (WIAT–II) ranged from less than the 0.1 percentile to the 10th percentile and from "significantly low" to "low average."  Tr. at 349.

An individualized education program ("IEP")[1] dated January 20, 2010, indicated that that Plaintiff was in the regular education environment 80 to 100 percent of the time.  Tr. at 332.  The IEP further showed that Plaintiff was receiving regular classroom instruction for all core subjects, but that instruction was supported by the presence of a special education teacher in math and science.  Tr. at 334.  It indicated that Plaintiff was on track to receive a high school diploma.  Tr. at 333.

---

[1] An "individualized education program" or "IEP" is a written statement for each child with a disability that is developed, reviewed, and revised in accordance with 20 U.S.C.A. § 1414, and that includes the provisions set forth in 20 U.S.C.A. § 1414 (d)(1)(A).

On March 19, 2010, Dennis L. Tummino completed a teacher questionnaire.  Tr. at 196–203.  Mr. Tummino indicated that he had known Plaintiff for less than a year.  Tr. at 196.  He indicated that Plaintiff had an obvious problem functioning in the domain for acquiring and using information.  Tr. at 197.  He specifically indicated that Plaintiff had an obvious problem with respect to all activities listed under the domain.  *Id.*  With respect to the domain of attending and completing tasks, he indicated that Plaintiff had an obvious and daily problem with the following:  paying attention when spoken to directly; focusing long enough to finish assigned activity or task; refocusing to task when necessary; carrying out multi-step instructions; organizing own things or school materials; completing class/homework assignments; completing work accurately without careless mistakes, and working at reasonable pace/finishing on time.  Tr. at 198.  He indicated that Plaintiff had a slight problem with respect to all other listed activities, except that he had no problem with changing from one activity to another without being disruptive.  *Id.*  With respect to the domain of interacting and relating with others, Mr. Tummino indicated that Plaintiff had an obvious, daily problem with seeking attention appropriately; introducing and maintaining relevant and appropriate topics of conversation; and using adequate vocabulary and grammar to express thoughts/ideas in general, everyday conversation.  Tr. at 199.  He indicated that Plaintiff had a slight problem with all other activities listed under the domain.  *Id.*

The report from Plaintiff's IEP meeting on January 13, 2011, indicated that Plaintiff was placed inside the regular class for 40 to 79 percent of the school day.  Tr. at 48.  He was noted to be receiving English/language arts and math services in the special

education classroom and social studies and science instruction in the regular classroom with a special education teacher present to provide support.  Tr. at 37.

On February 7, 2012, Plaintiff participated in entrance testing through Southeastern Community College.  Tr. at 235.  Plaintiff's reading score was at slightly over a second grade level; his language score was slightly below a second grade level; and his math score was slightly over a sixth grade level.  Tr. at 236.  At the time, Plaintiff was in the ninth grade.  Tr. at 235.

    C.     The Administrative Proceedings

        1.     The Administrative Hearing

            a.     Plaintiff's Testimony

At the hearing on February 8, 2012, Plaintiff testified that he had taken a pre-test the day before in reading and language for Southeastern Community College.  Tr. at 86–87.

Plaintiff testified that he had five or six other students in his class when he was enrolled in high school.  Tr. at 88.

Plaintiff testified that he rode his four-wheeler by himself most of the time.  Tr. at 89.  He indicated that he worked on a truck with his father.  Tr. at 91.  He testified that he played basketball.  Tr. at 92.  He also indicated that he used Facebook and spoke to his girlfriend on the telephone.  *Id.*

            b.     Witness Testimony

Ms. Hedwin testified that Plaintiff had difficulty with learning and that he was attending a GED program at Southeastern Community College.  Tr. at 70, 72.  She

6

testified that Plaintiff was previously enrolled in the ninth grade at Green Sea Floyds High School, where he had an IEP. *Id.* Ms. Hedwin testified that she removed Plaintiff from Green Sea Floyds High School because he was not getting the individual attention that he needed. Tr. at 71.

Ms. Hedwin testified that she worked with Plaintiff and tried to help him to learn new material, but that he had a hard time learning new things and applying what he learned in new settings. Tr. at 75.

Ms. Hedwin testified that Plaintiff had to be reminded several times to perform activities of daily living like bathing and picking up after himself. Tr. at 76. She indicated that he frequently neglected to perform his chores. Tr. at 77. She also testified that he would not typically ask for help when he did not know how to do something. Tr. at 78.

The ALJ questioned Ms. Hedwin about an indication that Dr. West wanted to put Plaintiff on Ritalin to possibly improve his IQ score. *Id.* Plaintiff testified that she discussed it with Plaintiff's teachers and that Plaintiff's teachers discouraged use of Ritalin. *Id.*

Ms. Hedwin testified that Plaintiff got along with other people, but that he typically stayed home. Tr. at 82. She indicated that he had never had a summer job. *Id.* She testified that Plaintiff did not react to people he did not know well, but that he would interact with people he knew. Tr. at 83.

Ms. Hedwin testified that Plaintiff rode a four-wheeler, used the computer, and watched television at home. Tr. at 84. She also indicated that Plaintiff helped his dad to work on a truck. Tr. at 85.

2.    The ALJ's Findings

In his decision dated February 29, 2012, the ALJ made the following findings of fact and conclusions of law:

1.    The claimant was born on October 29, 1995. Therefore, he was an adolescent on January 22, 2010, the date application was filed, and is currently an adolescent (20 CFR 416.926a(g)(2)).
2.    The claimant has not engaged in substantial gainful activity since January 22, 2010, the application date (20 CFR 416.924(b) and 416.971 *et seq.*).
3.    The claimant has the following severe impairment: learning disorder (20 CFR 416.924(c)).
4.    The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.924, 416.925, and 416.926).
5.    The claimant does not have an impairment or combination of impairments that functionally equals the severity of the listings (20 CFR 416.924(d) and 416.926(a)).
6.    The claimant has not been disabled, as defined in the Social Security Act, since January 22, 2010, the date the application was filed (20 CFR 416.924(a)).

Tr. at 17–25.

D.    Appeals Council Review

On July 29, 2013, the Appeals Council issued a notice denying Plaintiff's request for review dated February 29, 2012. Tr. at 3–6.

II.    Discussion

Plaintiff alleges the Commissioner erred for the following reasons:

1)    The ALJ's rationale rejecting a finding that Plaintiff met Listing 112.05C and/or D was not supported by substantial evidence; and

2)    The ALJ failed to consider the entire record and resolve inconsistencies and ambiguities in assessing the six functional equivalence domains described in 20 C.F.R. § 416.926a.

The Commissioner counters that substantial evidence supports the ALJ's findings and that the ALJ committed no legal error in his decision.

A.    Legal Framework

1.    The Commissioner's Determination-of-Disability Process

For purposes of eligibility for children's disability benefits under the Act, an individual under age 18 will be considered disabled if he has a "medically determinable physical or mental impairment or combination of impairments that causes marked and severe functional limitations, and that can be expected to cause death or that has lasted or can be expected to last for not less than 12 months." 20 C.F.R. § 416.906; *see also* 42 U.S.C. § 1382c(a)(3)(C)(i).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of sequential questions.  *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing considerations in adult disability matter and noting "need for efficiency" in considering disability claims). The Commissioner's regulations establish a three-part

evaluation process: (1) determine whether the child is currently engaged in substantial gainful activity ("SGA"); (2) determine whether the child has a severe impairment or impairments; (3) determine whether the child's impairments meet, medically equal, or functionally equal any impairment found in the Listings. *See* 20 C.F.R. § 416.924, 20 C.F.R. pt. 404, subpt. P, app. 1.

In determining whether a claimant has engaged in SGA, the Commissioner uses the same rules for children under age 18 as she does for adults. 20 C.F.R. § 416.924(b). SGA is defined as work activity that is both substantial and gainful. "Substantial work activity" is work activity that involves doing significant physical or mental activities. 20 C.F.R. § 416.972(a). "Gainful work activity" is work that is usually done for pay or profit, regardless of whether a profit is realized. 20 C.F.R. § 416.972(b). Generally, if an individual has earnings from employment or self-employment above a specific level set out in the regulations, it is presumed that he has demonstrated the ability to engage in SGA. 20 C.F.R. § 416.974; 20 C.F.R. § 416.975. If an individual engages in SGA, he is not disabled regardless of how severe his physical or mental impairments are and regardless of his age, education, and work experience. If the individual is not engaging in SGA, the analysis proceeds to the second step.

At step two, the ALJ must determine whether the claimant has a medically determinable "severe" impairment or a combination of impairments that is "severe." For an individual who has not attained age 18, a medically determinable impairment or combination of impairments is not severe if it is a slight abnormality or a combination of slight abnormalities that causes no more than minimal functional limitations. If the

claimant does not have a medically determinable severe impairment(s), he is not disabled. 20 C.F.R. § 416.924(c). If the claimant has a severe impairment, the analysis proceeds to the third step.

At step three, the Commissioner must determine whether the claimant has an impairment or combination of impairments that meets or medically equals the criteria of a Listed impairment, or that functionally equals one of the impairments found in the Listings. In making that determination, the Commissioner must consider the combined effect of all medically determinable impairments, even those that are not severe. 20 C.F.R. § 416.923; 20 C.F.R. § 416.924a(b)(4), and 20 C.F.R. § 416.926a(a), (c). If the claimant has an impairment or combination of impairments that meets, medically equals or functionally equals the Listings, and it has lasted or is expected to last for a continuous period of at least 12 months, he is presumed to be disabled. If not, the claimant is not disabled. 20 C.F.R. § 416.924(d). If he does not satisfy any of these three steps, he is not disabled. *See* 20 C.F.R. § 416.924(b)–(d).

In determining whether a claimant meets one of the impairments in the Listings, the Commissioner compares the symptoms, signs, and laboratory findings of an impairment, as shown in the medical evidence, with the medical criteria for the Listed impairment. "If a severe impairment is of the degree set forth in a Listing, and such impairment meets the twelve-month durational requirement . . . then [the claimant] 'is conclusively presumed to be disabled and entitled to benefits.'" *Warren v. Shalala*, 29 F.3d 1287, 1290 (8th Cir. 1994) (*quoting Bowen v. City of New York*, 476 U.S. 467, 470–71 (1986)). "For a claimant to show that his impairment matches a listing, it must meet

all of the specified medical criteria." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).  It is not enough that the impairment have the diagnosis of a Listed impairment, the claimant must also have the findings shown in the Listing of that impairment.  20 C.F.R. § 416.925(d); *see Bowen v. Yuckert*, 482 U.S. 137, 146 & n.5 (1987) (noting the claimant's burden to show that his impairment is presumptively disabling and to furnish medical evidence regarding his condition).

If the claimant's impairment or combination of impairments does not meet or medically equal the requirements of a Listing, the Commissioner will decide whether it results in limitations that functionally equal such requirements.  *See* 20 C.F.R. § 416.926a(a).  To assess functional equivalence, the Commissioner considers how the claimant functions in activities in terms of six domains, which are broad areas of functioning, intended to capture what a child can or cannot do.  20 C.F.R. § 416.926a(b)(1).  These domains are:  (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being.  20 C.F.R. § 416.926a(b)(1)(i) through (vi). To establish functional equivalence, the claimant must have a medically determinable impairment or combination of impairments that results either in "marked" limitations in two domains, or an "extreme" limitation in one domain.  20 C.F.R. § 416.926a(b)(1). The Commissioner will find that a claimant has a "marked" limitation in a domain when his impairment or combination of impairments interferes seriously with his ability to independently initiate, sustain, or complete activities.  *See* 20 C.F.R. § 416.926a(e)(2)(i).  A "marked" limitation also means a

limitation is "more than moderate" but "less than extreme," and may arise when several activities or functions are limited, or when only one is limited. *Id.* The Commissioner will find that the claimant has an "extreme" limitation in a domain when his impairment or combination of impairments interferes very seriously with his ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(3)(i). An "extreme" limitation also means a limitation is "more than marked," and may arise when one or more activities or functions are limited. *See id.*

2.    The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner [] made after a hearing to which he was a party." 42 U.S.C. § 405(g). The scope of that federal court review is narrowly-tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case. *See id.*; *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls*, 296 F.3d at 290 (*citing Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try these cases de novo or resolve mere conflicts in the evidence." *Vitek v. Finch*, 438 F.2d 1157, 1157–58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (*citing Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Thus, the

13

court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings and that her conclusion is rational.  *See Vitek*, 438 F.2d at 1157–58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964).  If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed "even should the court disagree with such decision."  *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

B.    Analysis

1.    Parts C and D of Listing 112.05

Plaintiff argues that the ALJ failed to fairly evaluate the case at step three of the sequential evaluation process because evidence shows that Plaintiff either had "a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing additional and significant limitation of function" or that he had "a valid IQ score of 59 or below."  [Entry #20 at 11].  Plaintiff further argues that it is the ALJ's duty to ascertain which Listings may be applicable to the Plaintiff's case and to apply the evidence to the relevant Listings.  [Entry #20 at 15].

The Commissioner argues that substantial evidence supports the ALJ's finding that Plaintiff did not meet Listing 112.05, and that, even if the ALJ erred in his analysis, Plaintiff did not meet the burden to prove that he met the Listing.  [Entry #22 at 4].  The Commissioner further argues that the evidence does not indicate that Plaintiff had "deficits in adaptive functioning" as required by Listing 112.05.  [Entry #22 at 6].

In his reply brief, Plaintiff argues that the Commissioner cannot make a *post hoc* argument about adaptive functioning when the ALJ did not address the issue in his

14

opinion.  [Entry #23 at 2–3].  Furthermore, Plaintiff argues that the evidence indicates that Plaintiff had deficits in adaptive functioning.  [Entry #23 at 3–4].

"In evaluating a claimant's impairment, an ALJ must fully analyze whether a claimant's impairment meets or equals a 'Listing' where there is factual support that a listing could be met." *Huntington v. Apfel*, 101 F. Supp. 2d 384, 390 (D. Md. 2000) citing *Cook v. Heckler*, 783 F.2d 1168, 1172 (4th Cir. 1986) (remanded, in part, because of ALJ's failure to specifically identify relevant "Listing" and compare each of the listed criteria to the evidence of the claimant's symptoms).  The ALJ's analysis must reflect a comparison of the symptoms, signs, and laboratory findings concerning the impairment, including any resulting functional limitations, with the corresponding criteria set forth in the relevant listing." *Id.  See* 20 C.F.R. § 416.926a.

"[T]he principles of agency law limit this Court's ability to affirm based on *post hoc* rationalizations by the Commissioner's lawyers."  *Robinson ex rel. M. R. v. Comm'r of Soc. Sec.*, 2009 WL 708267, at *12 (D.S.C. 2009).  "[R]egardless [of] whether there is enough evidence in the record to support the ALJ's decision, principles of administrative law require the ALJ to rationally articulate the grounds for [his] decision and confine our review to the reasons supplied by the ALJ."  *Id.* citing *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002).

Plaintiff "must meet 'all of [a listing's] specified medical criteria' to be considered disabled under its terms."  *Barnett ex rel. D. B. v. Comm'r of Soc. Sec.*, ---, Fed Appx. ---, 2014 WL 3585892, at *1 (6th Cir. 2014) citing *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).  *See also* 20 C.F.R. § 416.925(c)(3) ("We will find that your impairment(s) meet

a listing when it satisfies all the criteria of that listing, including any relevant criteria in the introduction.").

Listing 112.05 addresses intellectual disability.  To meet the Listing, Plaintiff must have "significantly subaverage intellectual functioning" and "deficits in adaptive functioning."  20 C.F.R. Part 404, Subpt. P, App. 1, §112.05.  In addition, Plaintiff's impairments must satisfy the requirements in either part A, B, C, D, E, or F of the Listing.  *Id.*  Plaintiff argues that parts C and D of Listing 112.05 are relevant to this case, so the undersigned restricts consideration to those parts.

Part C of Listing 112.05 requires "[a] valid verbal, performance, or full scale IQ of 59 or less."  20 C.F.R. Part 404, Subpt. P, App. 1, §112.05(C).  "In cases where more than one IQ is customarily derived from the test administered, e.g., where verbal, performance, and full scale IQs are provided in the Wechsler series, the lowest of these is used in conjunction with listing 112.05."  20 C.F.R. Part 404, Subpt. P, App. 1, §112.00(D)(9).  Furthermore, when multiple IQ tests are administered, the more current score should be deemed more reliable and IQ scores obtained at or after age 16 are more reliable than those obtained before age 16.  20 C.F.R. Part 404, Subpt. P, App. 1, §112.00(D)(10).  Because "the results of IQ tests tend to stabilize by the age of 16," the results of IQ tests administered "at age 16 or older should be viewed as a valid indication of the child's current status, provided they are compatible with the child's current behavior."  *Id.*  "IQ test results obtained between ages 7 and 16 should be considered current . . . for 2 years when the IQ is 40 or above."  *Id.*

16

Part D of Listing 112.05 requires "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant limitation of function."  20 C.F.R. Part 404, Subpt. P, App. 1, §112.05(D). For Listing 12.05D, the ALJ should "assess the degree of functional limitation the additional impairment(s) imposes to determine if it causes more than minimal functional limitations, i.e., is a "severe" impairment(s), as defined in § 426.924(c)."  20 C.F.R. Part 404, Subpt. P, App. 1, §112.00(A)¶8.

The undersigned limits consideration to whether the ALJ complied with the requirements for assessing the Listings, and declines to recommend a finding as to whether Plaintiff's impairments meet or equal Listing 112.05.

The ALJ's decision states the following with respect to consideration of the Listings:

> I have considered whether the claimant's learning disorder meets or equals the requirements of Listings 112.02 or 112.05.  In regard to Listing 112.02, the claimant has failed to demonstrate marked impairment in at least two of the childhood domains of functioning.  I have also specifically considered whether the claimant's learning disability meets Listing 112.05 of the Listing of Impairments.  There is no documentation that the claimant's IQ score falls within the required ranges for this Listing, that the claimant is dependent on others for her personal needs or is unable to follow directions such that the use of standardized measures of intellectual functioning is precluded, or that the claimant is markedly impaired in age-appropriate cognitive communicative functioning, social functioning, or personal functioning.

Tr. at 17.

The ALJ later acknowledged in the decision that "[t]he claimant's full scale IQ falls in the range of 60 to 62," but he failed to discuss those scores or any of the other IQ scores in the record.

The undersigned recommends a finding that the ALJ failed to fully analyze whether Plaintiff's impairments met or equaled Listing 112.05, in accordance with the Fourth Circuit's ruling in *Cook v. Heckler, supra*. Here, Plaintiff put forth sufficient evidence to raise an issue as to whether parts C and/or D of Listing 112.05 could be met in the form of psychological test results, IQ assessments, school records, a teacher questionnaire, function reports, and testimony. The burden then shifted to the ALJ to address the criteria under the Listing. The ALJ's analysis of Listing 112.05 failed to reflect a comparison of the symptoms, signs, and laboratory findings concerning the impairment, including any resulting functional limitations, with the corresponding criteria set forth in the Listing.

Based on this court's finding in *Robinson ex rel. M. R. v. Comm'r of Soc. Sec.,* the undersigned recommends that the court reject the Commissioner's *post hoc* rationalization that the ALJ's conclusion was justified because the evidence did not indicate that Plaintiff had deficits in adaptive functioning as required under Listing 112.05. This court cannot accept that as an argument where the ALJ did not rationally articulate it as the grounds for concluding that Plaintiff did not meet or equal the Listing.

The undersigned further recommends a finding that the ALJ erred in concluding that there was no evidence that Plaintiff's IQ score fell within the required ranges for Listing 112.05. To fall within the required range for analysis under parts C and D of

18

Listing 112.05, Plaintiff had to demonstrate an IQ below 70.  The ALJ specifically indicated that Plaintiff's IQ scores did not fall into the required ranges for the Listing.  Tr. at 17.  In fact, Plaintiff had two IQ tests administered approximately 21 months apart, which both showed IQ scores below 70.  The first IQ test was administered on December 9, 2009, by school psychologist Mary Walters.  Tr. at 347.  Plaintiff's verbal IQ was assessed at 65 and his full scale IQ was assessed at 62.  *Id.*  On September 15, 2011, Dr. West's neurodevelopmental cognitive assessment indicated that Plaintiff had a verbal IQ of 55 and a full scale IQ of 60.  Tr. at 443.  While each of these tests did yield higher IQ scores in other areas, 20 C.F.R. Part 404, Subpt. P, App. 1, §112.00(D)(9) makes it clear that the lowest score among verbal, performance, and full scale IQ assessments should be used in conjunction with listing 112.05.  Therefore, when he considered Listing 112.05, the ALJ should have looked at the lowest scores on each of these tests, which were the full scale IQ of 62 on the test administered in December 2009 and the verbal IQ of 55 on the test administered in September 2011.  Furthermore, when attempting to determine which test was more accurate, 20 C.F.R. Part 404, Subpt. P, App. 1, §112.00(D)(10) suggests that the ALJ should have placed greater emphasis on the IQ assessment of 55 by Dr. West than that performed by Ms. Walters in light of the facts that the test administered by Ms. Walters was administered more than two years before the hearing and that the test administered by Dr. West was administered a little more than a month before Plaintiff's 16th birthday.  Finally, even if the ALJ had validly rejected the verbal IQ of 55, he still had an obligation to discuss Plaintiff's additional impairments diagnosed

by Dr. West and to determine whether they imposed additional and significant limitations of function.

The undersigned recommends that, upon remand, the ALJ be directed to compare all evidence concerning Plaintiff's impairment with the corresponding criteria set forth in Listing 112.05.

### 2.    Assessment of Functional Equivalence Domains

Plaintiff argues that the ALJ failed to include a narrative discussion describing how the evidence supported his conclusions regarding Plaintiff's functioning in each of the domains.  [Entry #20 at 16].  Plaintiff argues that the ALJ erroneously placed greater weight on the non-medical opinion of Plaintiff's teacher than on the reports from acceptable medical sources.  [Entry #20 at 17].  Plaintiff also indicates that the ALJ failed to evaluate the record as a whole when determining whether Plaintiff's impairments functionally equaled the domains.  [Entry #20 at 20].  Plaintiff argues that the evidence supports a finding that Plaintiff had extreme limitation in "acquiring and using information."  [Entry #20 at 17–18].  Plaintiff also contends that Plaintiff had greater limitation in "attending and completing tasks" than that endorsed by the ALJ.  [Entry #30 at 18].

The Commissioner argues that substantial evidence supports the ALJ's determinations that Plaintiff had "marked" limitations in "acquiring and using information" and "less than marked" limitations in "attending and completing tasks." [Entry #22 at 6].  The Commissioner also notes that the domain of "acquiring and using information" considers not just test performance, but also "such activities as shopping,

20

using the library, using public transportation, carrying out practical instructions, and eventually, preparing for job interviews," and that the ALJ properly considered and weighed the questionnaire completed by Plaintiff's teacher as an opinion from an "other" source. [Entry #22 at 8] citing 20 C.F.R. § 416.913(d).

Because Plaintiff limits discussion of the domains to "acquiring and using information" and "attending and completing tasks," the undersigned limits analysis to these domains.

"Acquiring and using information" considers that an adolescent should continue to demonstrate learning from past academic assignments and use that learning in daily living situations without assistance. 20 C.F.R. §416.926a(g)(2)(v). Adolescents should also be able to comprehend, express, and apply simple and complex ideas, using increasingly complex language in learning and daily living situations. *Id.*

"Attending and completing tasks" considers the claimant's ability to focus and maintain attention. 20 C.F.R. §416.926a(h). This domain examines the claimant's ability to begin, carry through, and finish activities and considers the pace at which activities are performed and the ability to transition from one activity to another. *Id.*

"When standardized tests are used as the measure of functional parameters, a valid score that is two standard deviations below the norm for the test will be considered a marked restriction." 20 C.F.R. Part 404, Subpt. P, App. 1, §112.00(C)¶5. However, Plaintiff's "day-to-day functioning in domain-related activities" must be "consistent with that score." 20 C.F.R. §416.926a(e)(2)(iii).

"Extreme limitation does not necessarily mean a total lack or loss of ability to function."  20 C.F.R. §416.926a(e)(3).  "It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least three standard deviations below the mean."  *Id.*  Again, Plaintiff's "day-to-day functioning in domain-related activities" must be "consistent with that score."  20 C.F.R. §416.926a(e)(3)(iii).

The ALJ is not to rely on test scores alone to determine a claimant's level of limitation, but should also consider other information about functioning, including reports of classroom performance and observations of school personnel and others.  20 C.F.R. §416.926a(e)(4).  However, if the ALJ does not rely on the test scores as a measurement of the claimant's functioning within a domain, the ALJ must explain his reasons for doing so in the decision.  20 C.F.R. §416.926a(e)(4)(iii)(B).

The ALJ determined that Plaintiff had marked limitation in "acquiring and using information."  Tr. at 21.  To explain his conclusion, the ALJ indicated that Plaintiff's full scale IQ fell in the range of 60 to 62 and that he had significantly low scores in reading and written language, but that his teacher described his limitations as "obvious" rather than "serious."  *Id.*

The ALJ determined that Plaintiff had "less than marked limitation in attending and completing tasks."  *Id.*  The ALJ explained his conclusion by indicating that, while the consultative examiner indicated that Plaintiff had difficulty attending to and completing tasks, Plaintiff's teacher noted only a slight to obvious problem in this area.  *Id.*  He further indicated that no treating doctor had diagnosed Plaintiff with ADHD and

that the school evaluation suggested Plaintiff's limitations were more directly related to his ability to acquire information. *Id.*

The undersigned recommends a finding that the ALJ failed to adequately address his conclusions regarding Plaintiff's level of limitation under the functional domains of "acquiring and using information" and "attending and completing tasks."  Where, as here, the record contains test scores supporting a greater level of restriction than that endorsed by the ALJ, 20 C.F.R. §416.926a(e)(4)(iii)(B) requires that the ALJ explain his reasons for deviating from the levels of limitation suggested by the scores.  The record is replete with test scores suggesting greater limitation than that found by the ALJ.  In December 2009, Ms. Walters administered multiple tests.  Tr. at 345–50.  Plaintiff's score on the Bender Gestalt II test was 85, which placed him in the low average category for his age. Tr. at 347.  Plaintiff's scores on the WISC-IV ranged from "significantly low" to "borderline."  *Id.*  Plaintiff's scores on the WIAT-II ranged from less than the 0.1 percentile to the 10th percentile and from "significantly low" to "low average."  Tr. at 349.  In September 2011, Dr. West noted that Plaintiff had a full scale IQ of 60; a verbal comprehension score of 55; a perceptual reasoning score of 71; a working memory score of 77; and a processing speed score of 70.  Tr. at 443.  The day before the hearing, Plaintiff participated in entrance testing through Southeastern Community College, which indicated that Plaintiff was reading at slightly over a second grade level; using language at slightly below a second grade level; and completing math at slightly over a sixth grade level.  Tr. at 236.  While the ALJ did specifically mention the two full scale IQ scores in the record, he failed to cite any other test scores.  The testing performed the day before

23

the hearing indicated that Plaintiff was performing at three to seven grade levels below his actual grade level, which created a presumption under 20 C.F.R. § 416.926a(e) that Plaintiff had "extreme" limitation. While the ALJ was not required to find that Plaintiff had "extreme" limitation based solely on the test scores, he was required to explain why he was not basing his determination on those test scores, which he failed to do.

The undersigned also recommends a finding that the ALJ failed to consider the entire record when evaluating the domains of "acquiring and using information" and "attending and completing tasks." When evaluating functional equivalence under the domains, the ALJ is to consider the entire record. 20 C.F.R. §416.926a(e)(4). The ALJ clearly placed significant emphasis on the check-the-box teacher questionnaire completed by Mr. Tummino. However, the ALJ's decision does not cite other evidence in the record that is relevant to consideration of the domains of "acquiring and using information" and "attending and completing tasks." The record contains significant evidence to suggest that Plaintiff's day-to-day functioning was consistent with the assessed scores and more limited than the ALJ interprets Mr. Tummino's questionnaire to suggest.

In December 2009, Ms. Walters indicated that Plaintiff was referred for psycho-educational testing because he had trouble understanding directions and looked around to get cues from others about what he should be doing. Tr. at 345. Ms. Walters indicated that Plaintiff's classroom teacher, Mr. Biffkin, indicated that Plaintiff had difficulty with understanding directions and writing observations; that he appeared disorganized in activities; that he was distractible; that he had a fixed expression; that he lacked

emotional reactivity; that he daydreamed; that he maintained a blank expression; that he did not complete tasks; that he seldom finished work; that he lost homework papers; that he was unable to concentrate on an activity; that he did not keep up with assignments; that he had difficulty with writing; and that he had difficulty making himself understood by other students.  Tr. at 346.  Another teacher, Shannon Page, indicated that Plaintiff exhibited learning strength in transmath, but that he needed to be redirected often; did not know how to multiply or divide; did not know what multiples or factors were; could not express himself in writing; and seemed unmotivated and uninterested most of the time. *Id.*

The record also indicated that Plaintiff was moved from a regular classroom setting to a self-contained classroom in January 2011, approximately nine months after Mr. Tummino completed his evaluation, which suggests that Plaintiff's was later assessed as having a greater degree of functional limitation.  Tr. at 48, 441–42.

Dr. West noted that Plaintiff had a severe deficit in verbal sequencing, which suggested that Plaintiff may quickly become overwhelmed with orally presented information and fail to process the information appropriately.  Tr. at 443.  Dr. West also indicated that Plaintiff appeared to be inattentive to details, had poor verbal abilities, experienced difficulties with attention deficits, and had problems with comprehension due to having poor cognitive function overall.  *Id.*

The ALJ indicated that he placed significant weight on Dr. West's opinion and great weight on the opinion of Ms. Walters, but he ignored much of the information in their reports when forming conclusions about Plaintiff's level of limitation under the

domains. The ALJ cannot rely only on information that supports his finding while ignoring the information that does not. *See Swindle v. Sullivan*, 914 F.2d 222, 225 (11th Cir. 1990); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Therefore, upon remand, the undersigned recommends that the ALJ examine the entire record to determine Plaintiff's level of functional limitation under each domain.

III.    Conclusion and Recommendation

The court's function is not to substitute its own judgment for that of the ALJ, but to determine whether the ALJ's decision is supported as a matter of fact and law. Based on the foregoing, the court cannot determine that the Commissioner's decision is supported by substantial evidence. Therefore, the undersigned recommends, pursuant to the power of the court to enter a judgment affirming, modifying, or reversing the Commissioner's decision with remand in Social Security actions under sentence four of 42 U.S.C. § 405(g), that this matter be reversed and remanded for further administrative proceedings.

IT IS SO RECOMMENDED.

August 19, 2014                              Shiva V. Hodges
Columbia, South Carolina             United States Magistrate Judge

**The parties are directed to note the important information in the attached**
**"Notice of Right to File Objections to Report and Recommendation."**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see*  Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).